Eastern District of Kentucky
**F I L E D**

**JUN 2 7 2005**

AT PIKEVILLE
LESLIE G. WHITMER
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 04-292-GWU

PATRICIA L. NICHOLSON,                                      PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 CFR 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to
     Step 4. If no, the claimant is not disabled. See 20 CFR
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

Nicholson

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Nicholson

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment. The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987). Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

6

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Patricia L. Nicholson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of bradycardia, heel spurs, and obesity. (Tr. 20). Nevertheless, the ALJ determined that Mrs. Nicholson retained the residual functional capacity to perform a full range of sedentary level exertion, and proceeded to apply Rule 201.27 of the Commissioner's Medical-Vocational Guidelines (the "grids") applicable to a person of the plaintiff's age, education, and work experience, which directs a conclusion of "not disabled." (Tr. 22). The Appeals Council declined to review, and this action followed.

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mrs. Nicholson alleged disability due to a heart condition, heel spurs, and nerves. (Tr. 112).

Although Mrs. Nicholson had extensive medical workups for a variety of cardiac complaints, such as palpitations and fluttering in her chest and chest pain, few abnormalities were identified. Before her alleged onset date, for instance, in October, 1999, a cardiologist had diagnosed her with episodes of paroxysmal supraventricular tachycardia, but she was also having bradycardic episodes as well.

7

(Tr. 190). In February, 2002, the month after the plaintiff's alleged onset date (Tr. 112), she was scheduled to have an evaluation for complaints of dysphagia, but it was found that her heart rate was slow and she was referred to a cardiologist.

The cardiologist, Dr. Dalloul, noted that the plaintiff's heart rate had been 36 just before the procedure, and in his office it was 46. (Tr. 207-8). An echocardiogram showed normal left ventricular size and function and mitral valve prolapse; the Doppler study and color flow mapping was normal. (Tr. 223). Cardiac enzymes were negative, and, as the patient was feeling better, she was discharged after an overnight stay in the hospital with instructions to perform activities as tolerated. (Tr. 208).

Some months later, an exercise stress test was negative for any underlying coronary artery disease. (Tr. 334).

The plaintiff's family physician, Dr. A. Tidal, treated her extensively for various transient conditions such as colds and bronchitis, as well as complaints of foot pain, and assessed bilateral plantar fasciitis. (Tr. 305). He also prescribed medication for high blood pressure and scabies. (Tr. 298-9). He declined on several occasions to give an opinion regarding disability. (E.g., Tr. 229). None of the plaintiff's treating physicians suggested any functional restrictions, although Dr. Mary Domingo indicated in May, 2002 that Mrs. Nicholson might benefit from insoles and wedge orthotics for her foot problem. (Tr. 235).

8

The only physician to suggest any functional restrictions was a one-time physical examiner, Dr. Rita Ratliff, who examined the patient in June, 2002. The patient complained of bilateral foot pain, a slow heart rate, gastrointestinal upset, and heart palpitations five or six times a week. (Tr. 241). She also described difficulty getting a deep breath, but admitted that she smoked one pack of cigarettes a day. (Tr. 241-2). Dr. Ratliff's examination showed that the plaintiff weighed 261 pounds at a height of 62 inches, and had a normal pulse of 67. (Tr. 242). She walked with a wide-based, slightly antalgic gait. (Id.). Her chest sounds were clear, there were normal heart sounds and, while she had decreased range of motion of the hips primarily from obesity, otherwise her ranges of motion were normal. (Tr. 243). In particular, she had excellent range of motion of the lumbar spine, no spasms, negative straight leg raising, and no tenderness on palpation of the heels or plantar areas of the feet. (Id.). When she walked on her toes, however, she complained of pain on the left side, and complained of pain in both heels when she tried to do heel walking. (Id.). She was able to squat all the way down and back up without assistance. Dr. Ratliff opined that the plaintiff's foot pain would give her significant problems with ambulating "when she has flareups." (Tr. 244). Altogether, she would have a moderate restriction in her tolerance for standing and moving about because of the heel spurs. (Id.). Otherwise, there were no restrictions. (Id.).

A state agency physician who reviewed the record at this point concluded that there was no evidence of a medically determinable physical impairment. (Tr. 245-6).

9

In view of the fact that no other examiner or non-examiner placed any specific limitations on the plaintiff's activities due to physical problems, the opinion of Dr. Ratliff is uncontradicted, and is consistent with the ALJ's residual functional capacity finding.

As far as her mental condition was concerned, the plaintiff was treated at the Mountain Comprehensive Care Center (MCCC) beginning in December, 2001 and given a diagnosis of dysthymia with a current Global Assessment of Functioning (GAF) score of 55. (Tr. 274). A GAF score between 51 and 60 reflects moderate difficulty in social, occupational or school functioning. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition- Text Revision), p. 34. She was seen for regular counseling and, while not all the notes are legible, it appears that by August, 2002 Mrs. Nicholson described herself as "doing better," and the therapist noted a favorable response to her current medication, Paxil. (Tr. 264). She had a brighter affect, denied sleep or appetite disturbance, and denied any suicidal or homicidal ideation. (Id.). State agency physicians who reviewed the record in 2002 concluded that Mrs. Nicholson did not have a "severe" mental impairment. (Tr. 248, 278). The plaintiff subsequently returned to the MCCC in January, 2003, and was given diagnoses of dysthymia and relational problems. (Tr. 341). Her GAF at that time was slightly higher than before at 58, although still in the range of "moderate symptoms." (Id.). Subsequent office notes appear to suggest that she was not

10

Nicholson

taking her medications, Paxil and Vistaril, as prescribed. (Tr. 337). However, no specific functional restrictions were suggested.

While, even in the absence of specific restrictions from examining sources, the GAF scores are evidence that the plaintiff may have been moderately limited psychologically, they also suggest that her condition improved when she followed prescribed treatment. In addition, the plaintiff does not make any argument about mental restrictions on appeal. Therefore, there is sufficient evidence to support the ALJ's conclusion that the alleged mental impairments did not impose more than a slight or a minimal limitation in the claimant's ability to perform basic work-related activities, and were "not severe." (Tr. 20).

The decision will be affirmed.

This the _____ day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11